No. 23-35174
_____
_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT
_____

ELIZABETH HUNTER, et al, on behalf of themselves and all others similarly situated,

    Plaintiffs-Appellants,

        v.

ANDREW HARTZLER, et al,

    Appellants,

        v.

U.S. DEPARTMENT OF EDUCATION; CATHERINE E. LHAMON, in her official capacity as Assistant Secretary for the Office of Civil Rights, U.S. Department of Education,

    Defendants - Appellees,

WESTERN BAPTIST COLLEGE, DBA Corban University; WILLIAM JESSUP UNIVERSITY; PHOENIX SEMINARY; COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES,

    Intervenor-Defendants- Appellees.
_____

AMICUS CURIAE BRIEF OF OREGON AND 19 OTHER STATES IN SUPPORT OF PLAINTIFFS
_____

Appeal from the United States District Court
for the District of Oregon
_____

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
CHRISTOPHER A. PERDUE
Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone: (503) 378-4402
chris.perdue@doj.state.or.us

(Additional Counsel Listed on Signature Page)
_____
_____

# TABLE OF CONTENTS

STATEMENT OF INTEREST OF *AMICI CURIAE* ...........................................1

SUMMARY OF ARGUMENT ..............................................................................2

ARGUMENT .........................................................................................................3

    A.    The Department changed course on its implementing rules concerning Title IX's exemption for religious organizations. ..........3

    B.    The Department acted arbitrarily and capriciously by disregarding the available evidence and overlooking significant impacts. ...................................................................................5

        1.    The Department disregarded the available evidence and failed to offer good reasons for the change................... 6

        2.    The Department overlooked the significant impacts of the rule change. .................................................................... 8

CONCLUSION ....................................................................................................11

# TABLE OF AUTHORITIES

### Cases

*Cannon v. Univ. of Chi.*,
    441 U.S. 677 (1979) ............................................................................3, 10

*City & County of San Francisco v. United States Citizenship & Immigration Servs.*,
    981 F.3d 742 (9th Cir. 2020) ......................................................................8

*Encino Motorcars, LLC v. Navarro*,
    136 S. Ct. 2117 (2016) ...............................................................................5

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ...................................................................................5

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
    795 F.3d 956 (9th Cir. 2015) ......................................................................5

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dept. of Health & Human Servs.*,
    946 F.3d 1100 (9th Cir. 2020) .................................................................. 2

*Quinn v. Robinson*,
    783 F.2d 776 (9th Cir. 1986) .................................................................... 2

## Statutes & Constitutional Provisions

20 U.S.C. § 1681(a) ........................................................................................... 3
20 U.S.C. § 1681(a)(3) ....................................................................................... 4
20 U.S.C. § 1682 ................................................................................................ 4

## Rules

34 C.F.R. § 106.12 ............................................................................................. 4
34 C.F.R. § 106.8 ........................................................................................... 7, 9
34 C.F.R. §106.12(b) .......................................................................................... 5
83 Fed. Reg. 61482 ............................................................................................. 6
85 Fed. Reg. 30478 ......................................................................................... 8, 9
85 Fed. Reg. 30479 ......................................................................................... 4, 7
85 Fed. Reg. 30480 ............................................................................................. 7
85 Fed. Reg. at 30477–78 ................................................................................... 9
*Former* 34 C.F.R. § 106.12(b) (2019) ...................................................... 4, 6, 7
*Former* 34 C.F.R. § 106.12(c) (2019) .............................................................. 6

# AMICUS CURIAE BRIEF OF OREGON AND 19 OTHER STATES IN SUPPORT OF PLAINTIFFS

_____

## STATEMENT OF INTEREST OF *AMICI CURIAE*

The States of Oregon, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Pennsylvania, Rhode Island, Vermont, and Washington have a substantial interest in robust enforcement of Title IX of the Education Amendments of 1972 to protect students against sex-based discrimination. Title IX requires that schools receiving federal financial assistance provide educational programs and activities free from discrimination, harassment, and sexual violence. Although Congress created a narrow exemption for schools with religious tenets in conflict with Title IX's antidiscrimination rules, Congress intended that the exemption would be narrow and that Title IX's protections would have the broadest possible reach.

In 2020, during the Trump Administration, the Department of Education promulgated a rule that will obscure a school's Title IX exemption status by eliminating a forty-year-old regulation requiring educational institutions to submit a statement to the Office for Civil Rights "in writing" explaining why they qualify for a religious exemption. The 2020 rule makes it more difficult to tell which schools are claiming a religious exemption. In promulgating the rule,

the Department acted arbitrarily and capriciously by overlooking the available evidence and disregarding the rule's obvious impacts.

The district court concluded that plaintiffs failed to establish standing for their APA claims, and the *amici* States do not address standing here. But should this Court agree with plaintiffs that they have standing, plaintiffs have asked this Court to reach the merits of one of their APA claims. The *amici* States submit this brief to address the merits of that challenge, which presents a purely legal issue, and explain why this Court should set aside the rule. *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dept. of Health & Human Servs.,* 946 F.3d 1100, 1112 (9th Cir. 2020) (recognizing an appellate court's discretion to reach "purely legal questions" in the first instance where record is fully developed and injustice might otherwise result); *Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986) (recognizing same principle).

## SUMMARY OF ARGUMENT

For over 40 years, religious schools could seek exemption from Title IX's antidiscrimination rules only if they submitted a written statement to the Office of Civil Rights. For two reasons, the Department acted unreasonably when it did away with that requirement and promulgated a new rule that would permit schools to claim an exemption without submitting advance written notice. First, it overlooked evidence showing that the previous rule was clearly

understood and easily administered by religious schools.  Second, it disregarded significant impacts on prospective and current students and employees who might not know that a school will seek an exemption from antidiscrimination rules until after a complaint has been filed.  If this court addresses the merits of plaintiffs' APA challenge to the new rule, it should set the rule aside.

## ARGUMENT

**A.     The Department changed course on its implementing rules concerning Title IX's exemption for religious organizations.**

Title IX prohibits educational programs or activities receiving federal funds from excluding, denying benefits to, or subjecting to discrimination any person on the basis of sex.  20 U.S.C. § 1681(a).  The purpose of Title IX was to "end[] federal subsidies of such discrimination * * * [and] to make certain, in the areas of Federal funding, that taxpayer's dollars were not used to initiate or perpetuate * * * bias and prejudice * * * ."  S. Rep. No. 100-64, at 7, 9 (internal citation and quotation marks omitted).  It was likewise intended to protect against various forms of sex discrimination in educational programs and activities.  *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979) (observing that Congress "wanted to provide individual citizens effective protection" against discriminatory practices).

One narrow exception to Title IX is when an educational institution "is controlled by a religious organization" with "religious tenets" inconsistent with

the application of Title IX. 20 U.S.C. § 1681(a)(3). Congress intended that the religious exemption would be narrow lest it "open a giant loophole and lead to widespread sex discrimination in education." *See* S. Rep. No. 100-64, at 23. To help implement Title IX, the Department has promulgated rules to guide schools and other programs intending to claim the religious exemption. 20 U.S.C. § 1682 (authorizing departments extending federal financial assistance to education programs or activities to issue rules, regulations, and orders consistent with the goals of Title IX).

For over 40 years, the Department required that educational institutions file written notice of schools' intent to claim an exemption. *See former* 34 C.F.R. § 106.12(b) (2019). Often, the Department's Office of Civil Rights (OCR) would publish on its website assurance letters from various institutions claiming the religious exemption. 85 Fed. Reg. 30479 (describing that practice).

In 2020, during the administration of President Trump, the Department promulgated a rule amending 34 C.F.R. § 106.12 to eliminate the requirement that an educational institution "shall" advise the OCR "in writing" if it seeks a religious exemption. Under the new rule, an educational institution "may" advise the OCR in writing but need not do so unless the Department notifies the

institution that it is under investigation for noncompliance with the religious exemption. 34 C.F.R. §106.12(b).

**B.     The Department acted arbitrarily and capriciously by disregarding the available evidence and overlooking significant impacts.**

Although "[a]gencies are free to change their existing policies," they must provide "a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). An agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). An agency's policy change does not comply with the APA unless the agency:

> (1) displays "awareness that it is changing position,"
>
> (2) shows that "the new policy is permissible under the statute,"
>
> (3) "believes" the new policy is better, and
>
> (4) provides "good reasons" for the new policy, which, if the "new policy rests upon factual findings that contradict those which underlay its prior policy," must include "a reasoned explanation ... for disregarding facts and circumstances that underlay or were engendered by the prior policy.

*Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) (en banc) (format altered) (quoting *Fox*, 556 U.S. at 515–16).

The Department's 2020 rule eliminating the written-request requirement does not comply with that standard. Title IX was intended protect students and employees at educational institutions, and part of protecting of them is making

clear which educational institutions would claim an exemption from Title IX. The original written-submission rule achieved that end and created reasonable expectations for students and other affected parties protected by Title IX. In doing away with that rule, the Department disregarded the available evidence, failed to offer good reasons for the change, and overlooked the change's significant impacts.

### 1. The Department disregarded the available evidence and failed to offer good reasons for the change.

To justify its change in policy, the Department asserted that the new rule was necessary to avoid "confusing" and "burdensome" requirements on religious institutions that qualify for the exemption. 83 Fed. Reg. 61482. But the previous rule was neither confusing nor burdensome.

The previous rule was straightforward. A school "which wishes to claim the exemption" must do so "by submitting in writing" a statement identifying a conflict between Title IX's prohibitions and a specific religious tenet of the school. *Former* 34 C.F.R. § 106.12(b) (2019). If the school wanted "assurance of the exemption" from the Department, it could do so by submitting a request in writing with the same kind of statement. *Former* 34 C.F.R. § 106.12(c) (2019). Over five decades, hundreds of schools filed statements of exemptions without any apparent confusion.

Nor was the previous rule burdensome. Schools already must file notices under Title IX regardless of their intent to seek an exemption. *See* 34 C.F.R. § 106.8 (requiring that schools give notice to applicants for admission and employment of their non-discrimination policy). The previous written-submission rule did not require anything *more* burdensome. If anything, the written-submission rule was simpler. Schools intending to claim the exemption needed only to "submit[] in writing to the Assistant Secretary" a single document explaining the basis for the exemption. *Former* 34 C.F.R. § 106.12(b) (2019). The Department itself acknowledged that a school's awareness that it will qualify for an exemption is not something that arises "at the last minute" or requires intensive research to confirm. 85 Fed. Reg. 30479. And the Department identified no complaints from schools or other institutions about the burden of filing a document with the OCR. Schools thus faced only minimal procedural burdens in setting forth the reasons for a religious exemption that they all along intended to seek. Drawing the opposite conclusion, the Department offered no "reasoned explanation" accounting for the available evidence except to say that it "respectfully disagree[d]" with commentators suggesting the original written-submission rule was not confusing or burdensome. 85 Fed. Reg. 30480.

### 2. The Department overlooked the significant impacts of the rule change.

The Department also disregarded how the rule change would harm students and other affected parties. *See City & County of San Francisco v. United States Citizenship & Immigration Servs.*, 981 F.3d 742, 759–61 (9th Cir. 2020) (concluding that an agency acted arbitrarily and capriciously where it failed to address the consequences of a rule on people whom the rule was supposed to protect). The amendment will likely cause more students to unknowingly enroll in schools that wish to claim an exemption from Title IX, even though the schools have not invoked the exemption publicly. Students are entitled to know before they enroll whether their school will claim an exemption from federal discrimination law. They should not have to wait until after they become a victim of discrimination to learn that their school considers itself exempt from Title IX's anti-discrimination, anti-harassment, and anti-retaliation rules. Nor should schools be allowed to wait to assert their exemption from Title IX until after a complainant comes forward with an allegation.

The Department's answer— that its regulations do not "mandate[] that recipients deceive * * * students"—hardly responds to the problem. 85 Fed. Reg. 30478. The problem is not that the rule *requires* deception. The problem is that it impairs informed decision-making by applicants by allowing schools to

make important information about their exemption status more difficult to find. Some schools may choose not to publicize that they are exempt from Title IX, as the Department has suggested. *See* 85 Fed. Reg. 30478 (describing that possibility). And students may have fewer, readily available ways to check an institution's status when a school need not file anything invoking the exemption unless and until it must respond to a Title IX complaint. Indeed, in this case, at least one witness testified that a school's stated policy against illegal discrimination was confusing because it may have been premised on an undisclosed religious exemption that would make otherwise illegal discrimination legal. (*See* Tr 246, 248, 250).

In response to concerns that the rule might keep students in the dark about a school's anti-discrimination policy, the Department explained that another regulation, including 34 C.F.R. § 106.8, provides notice by informing students that a school may not discriminate based on sex and may not distribute materials suggesting that it can. 85 Fed. Reg. 30477–78. But that notice will help few people affected by discrimination. If anything, the notice required by 34 C.F.R. § 106.8 is made even more confusing for students when it is not coupled with a requirement that schools claim an exemption in advance of a complaint. Otherwise, a student might rely on the notice of a nondiscrimination

policy but learn that a school is claiming an exemption from the policy only after she is harmed by discrimination.

Those consequences cannot be squared with the intent of Congress in broadly banning sex discrimination at publicly funded educational institutions. Congress intended that Title IX "be given the broadest interpretation," S. Rep. No. 100-64, at 7, to provide individuals with effective protection against sex discrimination and harassment. *Cannon*, 441 U.S. at 704 (1979). Rules that muddy the waters around a school's exemption status and put the burden on students and employees in ascertaining that status would undermine Congress's goal of "address[ing] forcefully the shameful treatment of" vulnerable people by recipients of federal funding. S. Rep. No. 100-64, at 9. "Congress understood that these goals could be achieved if the Federal government used its power and authority to end discrimination." *Id.* at 7. By making it difficult for current and prospective students to know whether their schools will claim an exemption, the 2020 rule thwarts Congress's clear intent.

///

///

///

///

///

## CONCLUSION

If this court reaches the merits, it should set aside the 2020 rule that makes it harder for students and others affected by sex-based discrimination to know if they will receive Title IX's protections.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General

/s/ Christopher A. Perdue
CHRISTOPHER A. PERDUE #136166
Assistant Attorney General
chris.perdue@doj.state.or.us

Additional Counsel for Amicus Curiae

ROB BONTA
Attorney General of California
1300 I Street
Sacramento, CA 94244

PHILIP J. WEISER
Attorney General
State of Colorado
1300 Broadway
Denver, CO 80203

WILLIAM TONG
Attorney General
State of Connecticut
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
Attorney General of Delaware
820 North French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
Attorney General for the District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

ANNE E. LOPEZ
Attorney General of Hawaii
425 Queen Street
Honolulu, HI 96813

AARON M. FREY
Attorney General for the State of Maine
6 State House Station
Augusta, Maine 04333

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

KEITH ELLISON
Attorney General
State of Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

MATTHEW J. PLATKIN
Attorney General of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625

MICHELLE A. HENRY
Attorney General
Pennsylvania Office of Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120

CHARITY R. CLARK
Attorney General of Vermont
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001

KWAME RAUOL
Attorney General of Illinois
100 West Randolph Street
Chicago, IL 60601

ANTHONY G. BROWN
Attorney General of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202

DANA NESSEL
Michigan Attorney General
P.O. Box 30212
Lansing, Michigan 48909

LETITIA JAMES
Attorney General of New York
28 Liberty St., 23rd Floor
New York, NY 10005

AARON D. FORD
Attorney General of Nevada
100 North Carson Street
Carson City, NV 89701

PETER F. NERONHA
Attorney General of Rhode Island
150 South Main Street
Providence, Rhode Island 02903

ROBERT W. FERGUSON
Attorney General of Washington
1125 Washington Street SE
Olympia, WA 98504-0100

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Amicus Brief is proportionately spaced, has a typeface of 14 points or more and contains 2,158 words.

DATED: August 28, 2023

/s/ Christopher A. Perdue
CHRISTOPHER A. PERDUE #136166
Assistant Attorney General
chris.perdue@doj.state.or.us

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General
CHRISTOPHER A. PERDUE
Assistant Attorney General
1162 Court St.
Salem, Oregon 97301
Telephone: (503) 378-4402

Counsel for Amicus Curiae
State of Oregon

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELIZABETH HUNTER, et al, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>ANDREW HARTZLER, et al,<br><br>Appellants,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION; CATHERINE E. LHAMON, in her official capacity as Assistant Secretary for the Office of Civil Rights, U.S. Department of Education,<br><br>Defendants - Appellees,<br><br>WESTERN BAPTIST COLLEGE, DBA Corban University; WILLIAM JESSUP UNIVERSITY; PHOENIX SEMINARY; COUNCIL FOR CHRISTIAN COLLEGES & UNIVERSITIES,<br><br>Intervenor-Defendants-Appellees. | U.S.C.A. No. 23-35174<br><br>STATEMENT OF RELATED CASES |

Pursuant to Rule 28-2.6, Circuit Rules of the United States Court of Appeals for the Ninth Circuit, the undersigned, counsel of record for Amicus-Curiae State of Oregon, certifies that he has no knowledge of any related cases pending in this court.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General
BENJAMIN GUTMAN
Solicitor General

/s/ Christopher A. Perdue
CHRISTOPHER A. PERDUE #136166
Assistant Attorney General
chris.perdue@doj.state.or.us

Attorneys for Amicus Curiae
State of Oregon

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2023, I directed the Amicus Curiae Brief of Oregon and 19 Other States in Support of Plaintiffs to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Christopher A. Perdue
CHRISTOPHER A. PERDUE #136166
Assistant Attorney General
chris.perdue@doj.state.or.us

CP3:mkf/906710457