No. 23-35174

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**ELIZABETH HUNTER, et al.,**
*Plaintiff-Appellants,*

v.

**UNITED STATES DEPARTMENT OF EDUCATION, et al.,**
*Defendant-Appellees,*

and

**COUNCIL FOR CHRISTIAN COLLEGES
& UNIVERSITIES, et al.,**
*Defendant-Intervenors-Appellees.*

---

*On Appeal from the United States District Court for the District of Oregon*
Case No. 6:21-CV-00474-AA | Hon. Ann Aiken

---

# BRIEF OF AMICI CURIAE, FIVE LGBTQ+ STUDENT LEADERS AT PRIVATE RELIGIOUS UNIVERSITIES, IN SUPPORT OF APPELLANTS AND REVERSAL

---

**David A. Straite**
DICELLO LEVITT LLP
485 Lexington Ave, Suite 1001
New York, NY 10017
(646) 933-1000
dstraite@dicellolevitt.com

**Amy Keller**
DICELLO LEVITT LLP
10 N Dearborn St, 6th Floor
Chicago, IL 60602
(312) 214-7900
akeller@dicellolevitt.com

**Eli J. Hare**
DICELLO LEVITT LLP
505 20th St N, 15th Floor
Birmingham, AL 35203
(205) 855-5700
ehare@dicellolevitt.com

*Counsel for Amicus Curiae*

## DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Amici Curiae state that they are individuals, and therefore do not issue stock or have a parent corporation.

Date: August 28, 2023

*/s/ Eli J. Hare*

**Eli J. Hare**
**DiCello Levitt LLP**

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iii

STATEMENT OF AUTHORSHIP, CONTRIBUTIONS,
& AUTHORITY TO FILE ............................................................. v

IDENTITIES OF AMICI CURIAE & STATEMENT OF INTEREST .... 1

INTRODUCTION ...................................................................... 6

   I.  Samford University ........................................................ 7

      A. SAFE Samford ....................................................... 11

      B. Samford Together .................................................... 14

      C. Cumberland OUTLaw ............................................... 17

   II. Point Loma University ................................................. 22

      A. The Loma LGBTQIA+ Alumni & Allies Coalition ...................... 23

      B. Voices of Love ....................................................... 27

CONCLUSION ....................................................................... 31

Certificate of Compliance (Form 8) ............................................. 34

# TABLE OF AUTHORITIES

**CASES**

*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995) ................................................................6

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ................................................................6

*Hecox v. Little*,
  No. 20-35813, 2023 WL 5283127 (9th Cir. Aug. 17, 2023). ..................6

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
  547 U.S. 47, 126 S. Ct. 1297 (2006) ......................................32

**STATUTES**

20 U.S.C. § 1681(a)(3) ................................................................6

**OTHER AUTHORITIES**

*A Community of Diversity & Belonging*, PLNU (last accessed Aug. 27, 2023),
  https://www.pointloma.edu/diversity-equity-inclusion .......................23

Ala. Baptist, *Ala. Baptists Spotlight CP, Samford Relationship* (Nov. 28, 2017) ......................................................................9

*Alumni Board, Mission Statement*, PLNU (last visited Aug. 27, 2023),
  https://pointloma-public.courseleaf.com/grad-catalog/personnel/alumni-board-/ ......................................................26

Church of the Nazarene Manual (2017-2021),
  https://2017.manual.nazarene.org/ ....................................................23

David Roach, *Samford Considers Pro-LGBT Student Group*, Baptist Press (May 1, 2017),
  https://www.baptistpress.com/resource-library/news/samford-considers-pro-lgbt-student-group/ ....................................................16

Letter by Andrew Westmoreland, President of Samford University,
*Remarks to the Faculty* (Apr. 27, 2017), *archived at* Statement by
Andy Westmoreland, *Update Regarding Proposed Student
Organization*, Samford Univ. (Apr. 28, 2017),
https://www.samford.edu/news/updates/Update-Regarding-
Proposed-Student-Organization/2017-04-28 ...................................... 16

*MOSAIC*, PLNU ASB (lasted visited Aug. 27, 2023),
https://www.plnuasb.com/mosaic ...................................................... 26

Sean Flynt, *Samford University*, Encyclopedia of Alabama
(last updated Mar. 27, 2023),
https://encyclopediaofalabama.org/article/samford-university/ ........ 8, 9

SAFE Samford, *Our Mission* (last visited Aug. 26, 2023),
http://www.safesamford.org/ .................................................................. 3

Samford Together Purpose Statement,
*reproduced in* Statement by Andy Westmoreland, Samford University
President, *Update Regarding Proposed Student Organization* (Apr.
28, 2017), https://www.samford.edu/news/updates/Update-Regarding-
Proposed-Student-Organization/2017-04-28 ...................................... 15

Samford University, *Mission, Vision, & Values* (last visited Aug. 26,
2023), www.samford.edu/about/mission ................................................ 9

*Statement on Samford University's Decision to Deny OUTLaw
Formal Recognition as an Official Student Body Organization*,
SAFE Samford (Oct. 24, 2022),
http://www.safesamford.org/outlaw .................................................... 21

*Who We Are*, SAFE Samford (last visited Aug. 26, 2023),
http://www.safesamford.org/our-team ................................................ 13

**RULES**

Fed. R. App. P. 29(a)(2) ............................................................................ v

Fed. R. App. P. 29(a)(4)(E) ...................................................................... v

## STATEMENT OF AUTHORSHIP, CONTRIBUTIONS, & AUTHORITY TO FILE

Pursuant to Fed. R. App. P. 29(a)(4)(E), Amici Curiae certify that (1) no party or party's counsel authored this brief, in whole or in part; (2) no party, nor their counsel contributed money that was intended to fund the preparation or submission of this brief; and (3) no person—other than Amici Curiae and their counsel, contributed money that was intended to fund the preparation or submission of this brief.

Amici Curiae further certify that they have authority to file under Fed. R. App. P. 29(a)(2) because all parties have consented to this filing.

## IDENTITIES OF AMICI CURIAE
## & STATEMENT OF INTEREST

Amici Curiae are five LGBTQ+[1] current and former students of two different, private religious universities that receive federal funding: Samford University in Birmingham, Alabama, and Point Loma Nazarene University ("PLNU") in San Diego, California. Amici each sought to form official student organizations for LGTBQ+ students at their universities to provide queer students with a support network of peers who all share a common identity. Yet despite their benign purpose, Amici's student organizations were denied official recognition or equal treatment solely based on their groups' LGBTQ+ identity. In each of these denials, their universities also failed to provide Amici, or their respective organizations, any explanation as to how extending university recognition would be inconsistent with any particular tenet of the school's religious convictions. Instead, the universities broadly asserted that

---

[1] In this brief, Amici use the term "LGBTQ+" (Lesbian, Gay, Bisexual, Transgender, and Queer/Questioning) and "Queer" interchangeably. Both terms, in essence, broadly refer to any individuals who identity with a sexual orientation other than "straight," or whose gender identity or gender expression is different than the sex they were assigned at birth.

Title IX's religious exemption provides them with the power to arbitrarily deny formal recognition to LGBTQ+ student organizations without further comment.

Amici Curiae seek to provide this Honorable Court with their perspective on the practical implications of this case—namely, the very real effects of the Department of Education's policy of permitting religious schools to utilize Title IX's religious exemption as a means to discriminate against LGBTQ+ students by denying them the right to formally associate with their peers based on shared values, identities, and beliefs. Amici come from different religious backgrounds and sects of the Christian faith. They did not know, nor could have reasonably foreseen, that their Christian-affiliated universities would stigmatize and discriminate against queer people solely because of their LGBTQ+ identities. Amici's stories relating to how they came to attend a private religious university as an LGBTQ+ student, as well as the shock, confusion, frustration, and trauma they each experienced when they realized that their universities were "allowed" to discriminate against queer people under federal law. Amici's stories also demonstrate the logical fallacy inherent in the universities' argument that the recognition

of an identity-based LGBTQ+ student group amounts to an endorsement of LGBTQ+ positions or would be inconsistent with any of the universities' religious convictions.

Angela Whitlock (she/her) is a current third-year law student at Samford University's Cumberland School of Law. In the fall of 2021, she sought University recognition for Cumberland OUTLaw, a group representing over 50 LGBTQ+ and ally law students. Unlike any other student group at the law school, OUTLaw was forced to go through the more rigorous, 13-step undergraduate approval process. A year after its application, Samford denied OUTLaw's application, claiming that the University's recognition of an identity-based LGBTQ+ group may "invite opportunities to advocate for a larger agenda" that the university was "simply not willing to allow."

Brit Blalock (she/her) is a Samford alumna and founder of SAFE Samford, an organization for Samford students, alumni, faculty, and staff dedicated to ensuring that "all [LGBTQ+] members of the Samford community feel safe, welcomed, affirmed, and loved." (SAFE Samford, *Our Mission* (last visited Aug. 26, 2023), http://www.safesamford.org/). Blalock also collaborated with a group of active Samford students in 2015

who sought to form Samford Together, an undergraduate student organization whose mission was to provide a community for LGBTQ+ students and a forum to discuss LGBTQ+ issues. In 2017, two years after it applied for University recognition, the group received a near-unanimous vote by the entire faculty in favor of recommending Samford Together to the Board of Trustees for approval. Despite the faculty's recommendation, Samford Together remains an informal group not recognized by Samford as the University's president never presented the organization's application to the Board of Trustees to approval.

Courtney Smith (he/they) is a current junior at Samford University and President of Samford Prism, an undergraduate gay-straight student alliance organization that emerged in 2019. Like its predecessor, Prism was created to provide a community support network for Samford's LGBTQ+ undergraduates. Prism's efforts to receive official recognition have been suspended indefinitely following the University's denial of Cumberland OUTLaw's application in October of 2022.

Lauren Cazares (she/her) is alumna of Point Loma Nazarene University ("Point Loma") in San Diego, California. Cazares sought to establish an LGBTQ+ auxiliary group on Point Loma's Alumni Board to

help current LGBTQ+ students at Point Loma connect with queer alumni for professional networking opportunities. Although auxiliary groups exist for other identity groups, the Alumni Office blocked Cazares from proceeding with the LGBTQ+ group's formation.

Kimberly Correa (she/her/ella) is also an alumna of Point Loma. When Correa chose to attend Point Loma for college, her understanding of the Christian faith was based on the love and inclusiveness she received from her high school youth group. But, as she wrestled with her sexuality throughout her freshman year of college, the conservative, anti-LGBGTQ+ affirming religious environment caused Correa to suffer extreme anxiety and depression. She eventually found a group a queer students that provided her with the support she needed to survive. When that same group applied to become an official "student club," Point Loma approved the group, but only as an "interest group." The different categorization meant that Correa's organization is barred from receiving University funding to support their activities.

## INTRODUCTION

The Constitution's guarantee of Equal Protection requires that "all persons similarly situated should be treated alike" and prohibits the government from "discriminat[ing] against classes of people in an 'arbitrary or irrational' way." *Hecox v. Little*, No. 20-35813, 2023 WL 5283127, at *7 (9th Cir. Aug. 17, 2023) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). *See also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995) (explaining that the equal protection analysis under the Fifth and Fourteenth Amendments are the same). Yet, experiences of Amici Curiae demonstrate that Title IX's religious exemption, 20 U.S.C. § 1681(a)(3) (the "Exemption"), allows federally-funded religious universities to discriminate against classes of people arbitrarily and in violation of Equal Protection. Exempting private religious schools from the mandates of Title IX without any requirement that the school show how its "religious tenets" conflict with Title IX—allows the Department of Education to actively engage in needless, arbitrary discrimination against LGBTQ+ students attending federally-funded religious schools. There can be no rational basis for such

6

a policy in light of the harm suffered by those in need of Title IX's protections.

Part I of this brief details the experiences of Amici Brit Blalock, Angela Whitlock, and Courtney Smith, whose negative experiences as queer people at Samford University prompted them to form LGBTQ+ student organizations to provide affirming spaces, community support, and professional opportunities for Samford' LGBTQ+ students, but who were denied the opportunity to do so because of their groups' LGBTQ+ identities. Part II details the similar stories of two students from Point Loma Nazarene University: Lauren Cazares, who sought to create an affirming alumni support network for current queer students at Point Loma but was blocked by the school; and Kimberly Smith, who survived the hostile environment at Point Loma only because she happened to learn of an informal, underground group of queer students that gave her the support she needed to overcome her battle with depression.

## I.    Samford University

Samford was established in 1841 by the Alabama Baptist State Convention ("ABSC") to train Baptist ministers. (Sean Flynt, *Samford University*, Encyclopedia of Alabama (last updated Mar. 27, 2023),

https://encyclopediaofalabama.org/article/samford-university/). At the time, Samford only admitted white men, (*id.*), but today the university looks quite different. In addition to its divinity school, Samford now offers both graduate and undergraduate programs in a variety of subjects, such as business, arts and sciences, education, nursing, pharmacy, and public health. Samford is also home to the Cumberland School of Law—one of only three accredited law schools in the State of Alabama.

Admission to Samford is no longer exclusive to white, Baptist men. Today, the school admits both women and people of color, as well as Methodists, Presbyterians, Episcopalians, Catholics, Jews, and atheists. Samford also regularly admits LGBTQ+ individuals. That Samford's student body is comprised of such a variety of beliefs and backgrounds should come as no surprise given its institutional tenets. Samford's "Core Values" include not only faith-based commitments to the "Belief in God, the Creator of heaven and earth, and in Jesus Christ, His only Son, our Lord, and in the Holy Spirit," and an "Engagement with the life and teachings of Jesus," but also includes educational and open-minded commitments such as to "Learning and the responsible freedom of inquiry," an "Appreciation for diverse cultures and convictions," and

"Integrity, honesty and justice." (*See* Samford University, *Mission, Vision, & Values*, www.samford.edu/about/mission (last visited Aug. 26, 2023)).

Regarding LGBTQ+ issues, Samford has no policy in its Code of Conduct prohibiting students from engaging in LGBTQ-related conduct, such as rules prohibiting students from dating members of the same sex, identifying as a gender different than the one they were assigned at birth, or publicly advocating for LGBTQ+ rights. In fact, Samford removed a provision from its Code of Conduct in 2007-08 which prohibited homosexual behavior. The school has also taken affirmative steps in recent years to disassociate itself with the Baptist denomination. For example, Samford's Board of Trustees decided to become independent from the ABSC in 1994 by voting to allow the Board to elect its own members. (Flynt, *supra*.). And as of January 1, 2018, Samford voluntarily decided that it would no longer accept any funding from the Convention after receiving pushback for almost approving of the LGBTQ+ group, Samford Together, discussed more thoroughly *infra*. (Ala. Baptist, *Ala. Baptists Spotlight CP, Samford Relationship* (Nov. 28, 2017)). Most importantly, Samford does not in any way inform LGBTQ+ applicants

that their ability to engage in certain LGBTQ-related activities or expression will be severely limited should they chose to attend, even when the school is aware of their LGBTQ+ identity.

The public history of Samford's distancing itself from the non-affirming Baptist denomination, the removal of anti-LGBTQ+ provisions from its Code of Conduct, and the school's inclusive, friendly marketing, lead many LGBTQ+ students to the conclusion that its queer students would be treated with tolerance and respect and given equal access to the privileges, benefits, and opportunities of their education. But despite the University's professed values of tolerance and acceptance, the welcoming language on its website, and the University's public history of distancing itself from the LGBTQ+ non-affirming Baptist denomination, Samford University has denied three different LGBTQ+ student groups official recognition in the past decade. None of these three LGBTQ+ student groups sought to "advocate" for any agenda; rather, these organizations sought to provide community and professional support networks for Samford's LGBTQ+ students.

## A. SAFE Samford

Prior to attending Samford University, the idea of a Christian institution discriminating against members of the LGBTQ+ community was a foreign concept for Amicus Curiae Brit Blalock. Blalock grew up as a Christian in the LGBTQ+ affirming United Methodist Church. Her family was also affirming of the LGBTQ+ community; it was a normal thing for her parents to host their own queer friends at Blalock's family home for dinner or other social activities. Blalock never felt the need to inquire about a Christian university's stance about LGBTQ+ issues. She was not out at the time she was applying to college, nor did she know she know was queer, and the important decision of where Blalock would attend college would be a financially motivated decision, regardless. Thus, when Samford University offered Blalock a full scholarship in 2004, the fact that Samford was a Christian university gave her no pause. What Blalock did not understand at the time was how the word "Christian" meant something different to the leaders of Samford University than it did to her.

Although Samford was a Christian university, Blalock realized that Samford's doctrine as an institution was more averse to social issues,

such as marriage equality and LGBTQ+ rights, than the faith she had grown up in. When Blalock realized she was queer during her sophomore year, Blalock chose to keep her sexuality a secret out of fear that she would be treated differently by her professors and her peers or the fear that, even worse, she would be pressured to go to counseling to "change" her sexual orientation.

Blalock felt increasingly isolated as she continued her education at Samford. Her mental health deteriorated due to a combination of the constant anti-LGBTQ+ rhetoric espoused by faith leaders and classmates at her school while simultaneously having to come to terms with the fact that she was in love with a woman. She experienced an ever-present feeling of hopeless from having no one to turn to for comfort or help. Blalock felt deeply suicidal by her senior year, so she sought out treatment from the counseling services that Samford provides to its students free of charge. However, Blalock felt unable to be honest about the root cause of her depression and suicidal thoughts during her counseling sessions due to her Samford-affiliated therapist's self-professed and explicit anti-LGBTQ+ religious values. Unable to get the help and support she needed, Blalock made a plan to take her life in 2007

during the first semester of her senior year. She gathered the strongest medication she could find in her cabinet and laid them out before her, but in a brief moment of clarity, Blalock revealed her plan to a friend who offered to take the medication from her, saving Blalock's life.

Since graduating from Samford in 2008, Blalock has received extensive medical treatment for the clinical depression caused by her college experience. Blalock decided that she never wanted another Samford student to experience the anguish and isolation she had experienced on campus, so, in 2011, she established SAFE Samford, a group of students, alumni, faculty, and staff at Samford whose purpose is "to ensure that all LGBTQ[+] members of the Samford community feel safe, welcomed, affirmed, and loved." (*Who We Are*, SAFE Samford (last visited Aug. 26, 2023), http://www.safesamford.org/our-team). As an organization, SAFE Samford encourages the constructive and respectful discussion of issue related to sexual orientation, gender identity and expression, and faith on Samford's campus and among its administration. Additionally, the organization has historically advocated for Samford's LGTBQ+ students when the University has treated them unfairly.

## B. Samford Together

In the spring of 2015—four years after the establishment of SAFE Samford—an active student at Samford's undergraduate college sought to form an LGBTQ+ identity-based student organization for current students.[2] The student and his fellow would-be board members decided on a name, "Samford Together," and a purpose:

> Samford Together will provide a forum for SU students who want to discuss topics relating to sexual orientation and gender identity. In an open-minded and accepting environment, students will find community and opportunities to study an array of ideas and opinions on these subjects. Samford Together hopes to encourage students' academic development, social consciousness, spiritual formation, and relational clarity, all within a community of peers who might share experiences, concerns, fears, difficulties, opportunities, and hopes. Samford Together is rooted in the Samford motto and core values, and its members strive to follow Christ on a path of learning and communication, knowing that the world will be better as a result of the contributions of all Samford students.

---

[2] This student is not one of the amici curiae listed in this brief. However, amici curiae Brit Blalock and Courtney Smith have personal knowledge of Samford Together's history. Brit is an alumna of Samford who supported Samford Together during the approval process. Courtney is a current junior at Samford and President of Samford Prism, the gay-straight alliance that exists in place of Samford Together today.

(Samford Together Purpose Statement, *reproduced in* Statement by Andy Westmoreland, Samford University President, *Update Regarding Proposed Student Organization* (Apr. 28, 2017), https://www.samford.edu/news/updates/Update-Regarding-Proposed-Student-Organization/2017-04-28). After careful consultation with trusted faculty, staff members in Samford's Office of Student Life, and other members of the University administration, Samford Together began the extensive 13-step process of becoming an official student organization at Samford University. The group adopted a constitution, bylaws, and submitted an application for recognition, which was approved by the Student Government Association.

In contrast to the process most student organizations face when seeking recognition, Samford Together was also required to secure the additional approval of the Faculty Campus Life Committee, the Faculty Senate, and the vote of the full body of faculty. Nevertheless, on April 27, 2017, the faculty body voted to recommend Samford Together for approval by Samford's Board of Trustees. (David Roach, *Samford Considers Pro-LGBT Student Group*, Baptist Press (May 1, 2017), https://www.baptistpress.com/resource-library/news/samford-considers-

pro-lgbt-student-group/). President Westmoreland told the faculty that he wanted to "take the time necessary … to work especially with [Samford's] trustees" on the question of approving Samford Together, and therefore would "likely wait until the September meeting of the board for formal consideration of any proposal." (Letter by Andrew Westmoreland, President of Samford University, *Remarks to the Faculty* (Apr. 27, 2017), *archived at* Statement by Andy Westmoreland, *Update Regarding Proposed Student Organization*, Samford Univ. (Apr. 28, 2017), https://www.samford.edu/news/updates/Update-Regarding-Proposed-Student-Organization/2017-04-28).

Prior to the September Board of Trustees meeting, President Westmoreland announced in a July 7, 2017 email that he would not take Samford Together to the Board for a vote. The group's leaders were not informed of the decision prior to the email, and Samford Together never received recognition.

A similar undergraduate organization, Samford Prism, emerged in 2019 and still exists today. Prism's mission is "to create a safe space for Samford's LGBTQ+ students" by connecting undergraduates with

affirming faculty and staff and organizing social events off-campus.[3] Like its predecessor, the organization's purpose is not advocacy, but community—yet still Prism is not recognized by the University. Due to its lack of recognition, Prism does not have access to university funding, it cannot take advantage of the University's other resources such as reserving meeting or event spaces, and it cannot participate in university-sponsored forums like other groups are allowed to do.

### C. Cumberland OUTLaw

Every fall, the various student organizations at Samford's Cumberland School of Law showcase their groups to the student body and attract new members at the annual Student Organizations Fair. They engage with new students at organization-sponsored tables, hand out flyers, and speak with the incoming law students about the

---

[3] Prism's current president, Amicus Curiae Courtney Smith, is a current student in their junior year at Samford. When it came time to choose where to go to college, Smith's parents conditioned their support on the premise that Smith could only go to a Christian college. Samford University was Smith's first choice because to them, Samford appeared to be the most accepting and tolerant towards LGBTQ+ students and other minorities.

networking opportunities that each organization offers and how association with the organization can improve career opportunities.

In the fall of 2021, Amicus Curiae Angela Whitlock (she/her) attended the event and noticed the variety of identities represented: Women in Law, the Black Law Students Association, the Hispanic Interest Law Students Association, and many other organizations of various and diverse membership. She also noticed the array of different interests, ideologies, and beliefs represented by these organizations. There were organizations for both Democrats and Republicans, evangelical Christians and Catholics, and legal conservatives and progressives, alike. Each of these represented organizations provide communities for Cumberland students based on common identities and shared beliefs, as well as professional networking opportunities that often lead to coveted internships and job offers.

Whitlock noticed that those same benefits and opportunities were missing for Cumberland's LGBTQ+ students. Later that semester, Whitlock, along with a few of her likeminded peers, began the process of forming Cumberland OUTLaw, a group which now represents over 50

LGBTQ+ and ally students at Samford University's Cumberland School of Law.

The process of becoming an official student organization at the law school is rather informal compared to Samford's undergraduate program. Law student organizations are only required to assemble a board, draft their founding documents, and then get approval from the law school's administration. However, when Whitlock applied OUTLaw for recognition, school administrators informed Whitlock that, given OUTLaw's LGBTQ+ nature, the organization would need to apply through the University's undergraduate approval process for a more thorough review. OUTLaw was the first, and only, law student organization at Samford to be required to apply through the undergraduate process and gain approval from Samford's President in order to gain official recognition from Samford.

OUTLaw submitted its application again—this time to the University's Office of Student Leadership & Involvement ("OSLI")—on February 23, 2022. Whitlock also requested a meeting with Samford's president, Dr. Beck Taylor, to discuss OUTLaw's application. During their first meeting, President Taylor told Whitlock that he did not think

it would be useful or productive for OUTLaw to continue to work through the undergraduate process for club recognition, explaining that the process was not meant for graduate organizations. He told Whitlock that he was actively working on arranging a separate process for approving of graduate organizations and that he would use the summer to look further into the issue and consult with the Board of Trustees.

Whitlock did not hear from President Taylor again until she requested an update on OUTLaw's application in September 2022. OUTLaw's Board then met with President Taylor on October, 20, 2022, at which point President Taylor informed OUTLaw's Board that the University was denying the group's application based upon its LGBTQ+ identity. He claimed that to formally allow an LGBTQ+ group to exist, participate, and be seen on campus would invite opportunities for LGBTQ+ individuals to "advocate for a larger agenda" that the University is "simply not willing" to permit.

The news was a surprise to Whitlock, to OUTLaw, and to many of the law school's faculty members. In a statement released following the denial, OUTLaw explained their disappointment and described the effects of non-recognition:

20

If by "agenda," President Taylor means that we intend to let the LGBTQ+ population at Samford know that they are welcomed and loved just the way they are, then by all means his accusation[s] are well founded. But in contrast to the imaginary 'harm' contemplated by President Taylor, the LGBTQ+ students at Samford's law school … must deal with the real and immediate harms posed by the anti-LGBTQ+ stigma which the University's position endorses.

OUTLaw is denied equality to other identity- and belief-based groups on campus in practical ways, too. We are forbidden from identifying with Samford by name, which also means we cannot include the name of our own law school in our organization's name, on our social media pages, or any of our merchandise, apparel, or other marketing materials. OUTLaw cannot take advantage of any university resources available to other groups, which means that we cannot even reserve a room in the library for meetings or host a table on the quad. OUTLaw's members cannot participate in Law Week as a group, we cannot sponsor a Bar Review, nor can we invite or host guest speakers on campus. Our members cannot even list "Cumberland OUTLaw" on our resumes. Despite attending the same institution, paying the same amount of tuition, and being accepted to the school despite the administration's knowledge of our LGBTQ+ identities, the LGBTQ+ students at Cumberland cannot enjoy the same privileges, benefits, and opportunities enjoyed by our non-LGBTQ+ peers without the University's formal recognition of OUTLaw.

(*Statement on Samford University's Decision to Deny OUTLaw Formal Recognition as an Official Student Body Organization*, SAFE Samford (Oct. 24, 2022), http://www.safesamford.org/outlaw).

Samford's graduate students—specifically those at the Cumberland School of Law—are exempt from the few religious requirements applicable to its undergraduate students. Cumberland students are not required to sign a statement of faith prior to admission, nor are they required to attend weekly convocation services. In fact, there are no affirmative religious requirements imposed upon Cumberland students. In no way are Cumberland students required to affirm, adhere to, or affiliate with the Christian faith or the Baptist denomination. But when a group of law students sought to form an LGBTQ+ identity-based student organization, the University's President expressly cited Title IX's religious exemption as giving the University a "freedom to discriminate" against its LGBTQ+ students.

## II. Point Loma University

Point Loma Nazarene University ("PLNU" or "Point Loma"), is a private Christian university in San Diego, California, affiliated with the Church of the Nazarene[4] faith. Its website describes the school as "a

_____

[4] The current Manual of the Church of the Nazarene states that the Church "believes that every man or woman should be treated with dignity, grace, and holy love, whatever their sexual orientation."

Christian community" that is "committed to pursue and reflect the diversity and belonging of the kingdom of God" and states that the university "believe[s] that every human being is created in the image of God and that our diverse identities, experiences, and abilities enrich our learning community." (*A Community of Diversity & Belonging*, PLNU (last accessed Aug. 27, 2023), https://www.pointloma.edu/diversity-equity-inclusion). However, the experiences of Amici Lauren Cazares (she/her) and Kimberly Correa (she/her/ella) show that the University's actions do not always reflect its values. Their stories provide a snapshot as to what life is like for queer people at private religious universities without the protection from discrimination that Title IX provides.

### A.    The Loma LGBTQIA+ Alumni & Allies Coalition

Cazares began to realize she was queer at age 12. Her Christian faith has been a foundational part of her upbringing and remains so today. Cazares grew up attending a large "megachurch" with her family. Like her future alma mater, the church was associated with the Church

---

However, it also states that "the practice of same-sex sexual intimacy is contrary to God's will for human sexuality." (Church of the Nazarene Manual (2017-2021), https://2017.manual.nazarene.org/.).

of the Nazarene denomination. Its non-affirming stance towards LGBTQ+ issues caused Cazares to experience suicidal ideation throughout her youth as she tried to reconcile her faith with her sexuality. As she drew closer to graduating high school, Cazares immersed herself in her church and committed to studying the tenets of the Nazarene faith, all in an effort to discern whether her sexuality was something that actually needed to be "fixed" at all.

Cazares chose to go to Point Loma when she was only 17. At the time, she never planned on coming out as queer—ever. She worried about how her family and church community would respond if they knew the truth of her sexuality. As a result, Cazares never inquired about any of her prospective colleges' positions on LGBTQ+ issues. Her primary criteria in choosing a college was to remain close to her family, so she was ecstatic to receive her acceptance letter from Point Loma Nazarene University, only 25 minutes away from home.

Cazares's mental health worsened during her first year at Point Loma during which time she continued to grapple with her sexuality and her faith. At times, the complete lack of visible queer people or any acknowledgement of their existence would cause Cazares to feel

completely isolated from her peers. By the end of her first semester, the combination of having to conceal her sexuality, the lack of any visible queer people like her, and the overwhelming feeling of isolation caused Cazares to experience the most severe panic attack of her life—alone, in her dorm room.

Cazares later came out as lesbian while at Point Loma, but her experiences wrestling with her sexual orientation within Point Loma's anti-LGTBQ+ environment  prompted her to form the Loma LGBTQIA+ Alumni & Allies Coalition (the "Coalition"), an informal association of queer Point Loma alumni, after her graduation from Point Loma. The Coalition exists to show current queer students at Point Loma that queer people have not only survived Point Loma's stigmatizing rhetoric and discriminatory treatment, but that they have also thrived in their lives after graduating.  Additionally, the Coalition seeks to provide a way for LGBTQ+ students and alumni—many of whom wait to come out until after graduation—to connect and find jobs, housing, and other resources. The Coalition also provides mentors to current PLNU students who identify as LGBTQ+. Those mentors are available if students have

questions or need advice about professors, classes, potential jobs, or housing from the perspective of queer alumni.

In September of 2022, Cazares contacted the Alumni Office about making the Coalition an official "auxiliary group" of PLNU's Alumni Association. Auxiliary groups are interest-based subcommittees of Point Loma's Alumni Association, which "exists to provide opportunities for alumni to stay involved with the university, support the university, connect with other alumni and interact with [the university's] students" and "facilitates ongoing dialogue between the alumni and the university." (*Alumni Board, Mission Statement*, PLNU (last visited Aug. 27, 2023), https://pointloma-public.courseleaf.com/grad-catalog/personnel/alumni-board-/). Auxiliary groups that are recognized include groups for business, education, nursing, and women. There is also an auxiliary group for MOSAIC[5] alumni. Despite the Coalition's rather benign

---

[5] "MOSAIC" stands for "Multicultural Opportunities for Students Actively Involved in Community." PLNU's website states that MOSAIC clubs "represent some of the amazingly diverse groups that make up Point Loma" and provide students with opportunities "to connect with others around them who share similar cultural backgrounds while educating other students and creating unique experiences to allow for deeper connections and understanding." (*MOSAIC*, PLNU ASB (lasted visited Aug. 27, 2023), https://www.plnuasb.com/mosaic).

purpose and the array of different auxiliary groups that are approved, the office informed Cazares that the Board of Trustees would not permit the Coalition to become official. To this day, Point Loma has not recognized the Coalition as a formal "auxiliary group" of its Alumni Board. As a result, the Coalition has been denied access to Point Loma's queer students who, like Cazares, are disproportionately more likely to experience depression, anxiety, and suicidal thoughts at higher rates than their straight peers on campus due to the overwhelming feeling of isolation as a queer student on a religious campus.

## B.    Voices of Love

Unlike Cazares, Amicus Curiae Kimberly Correa did not grow up in a religious family. Her first encounter with the Christian faith was during high school when her friends invited her to join their youth group at a local non-denominational church. Correa was immediately drawn into the church's culture, which she found loving and accepting. She enjoyed her experience with the youth group so much so that Correa chose to apply only to religious universities, believing that she would receive the same level of love and acceptance as she had at her youth group.

It was only after Correa had accepted her offer to attend Point Loma that she had her first negative experience with religion and its treatment of LGBTQ+ individuals. The summer before starting college at Point Loma, Correa's best friend was expelled from their youth group after the church found out that her friend was queer. Correa was shocked, confused, and most of all, heartbroken. She had no idea that her church would treat someone differently solely because of their LGBTQ+ identity, much less exclude them from the church outright.

The experience of her friend's expulsion scarred Correa, partly because she saw a part of her own queer self in her friend. When Correa accepted the offer to attend Point Loma, her understanding of the school's religious requirements was that students had to do three things: (1) refrain from drinking alcohol (on or off campus), (2) abstain from premarital sex, and (3) attend chapel services twice a week. Now, however, Correa was terrified that the same thing that happened to her friend at church could happen again as a freshman at Point Loma. By the time of her friend's expulsion, however, it was logistically impracticable for Correa to back out from going to Point Loma.

Correa was immediately uncomfortable once classes began her freshman year at Point Loma. Still disturbed by what happened to her friend at her home church, many of the religious practices observed daily at Point Loma left Correa feeling like a complete outsider. She decided that she wanted to leave Point Loma one night after her freshman roommate returned to their dorm room after attending a weekend-long religious conference hosted by the Church of the Nazarene. Her roommate was sobbing uncontrollably, and when Correa asked what was wrong, her roommate responded that the Church had allowed a woman to preach at the conference that weekend, which scared her roommate because it contradicted the religious beliefs of her childhood faith. Correa was speechless. She had never seen someone react negatively—much less crying unconsolably—to a woman preaching.

Immediately after that night, Correa decided she no longer wanted to be in Point Loma's religiously conservative environment. She contacted the University's Vice President for Diversity and Belonging and asked about transferring to another school or taking a leave of absence, but no one ever responded to her.

Correa managed to survive her first year at Point Loma, but she still felt incredibly alone and struggled heavily with depression. At the beginning of her sophomore year, she learned from a friend about an informal, "underground" club for queer students at Point Loma. The club had no name, it did not advertise its existence publicly, and it only met in its members' dorm rooms and empty corners in recreational centers on campus. There, she found a community of people who, for the first time, she felt close to. It was where she made her closest friendships at Point Loma, giving Correa the support she needed to survive the next three years at Point Loma.

In 2016, the underground group of LGBTQ+ students felt that other LGBTQ+ students at Point Loma needed to know that there were others like them on campus. They decided they would apply to become an official student club at Point Loma. The first step was to create a name for their group, and they chose "Voices of Love." Voices of Love ("VOL") started as a book club where queer students and allies could attend and discuss matters of faith as it relates to sexual orientation, gender identity, and other LGBTQ+ issues. In response to VOL's request for official recognition, Point Loma informed them that the Board of Trustees would

allow VOL to become an official "interest group" affiliated with Point Loma, but not an official "student club," as other identity-based student groups had been allowed to do. "Interest groups" do not have access to Point Loma funding to support their activities, while "student clubs" do. Instead, VOL has had to fundraise to support the group's inclusive and life-saving mission of providing safe spaces to LGBTQ+ students. The sole reason provided by the Point Loma for the disparate treatment was VOL's LGBTQ+ identity.

## CONCLUSION

The recognition denials and unequal treatment faced by Samford Together, Samford Prism, Cumberland OUTLaw, the Loma LGBTQIA+ Alumni & Allies Coalition, and Voices of Love each exemplify the arbitrary and irrational discriminatory effects of Title IX's religious exemption. Both Samford University and Point Loma Nazarene University advertise their institutions as having safe, welcoming, and inclusive environments that champion tolerance, encourage free inquiry and dissent, and appreciate the diverse backgrounds of their student bodies. Both institutions accept students who openly identify as a member of the LGBTQ+ community without giving those students any

notice that they might not be afforded the same benefits, privileges, and opportunities as their straight, cisgender peers.

It is the view of these Amici Curiae that the mere recognition of their LGBTQ+ identity-based groups does not amount to an endorsement of LGBTQ+ "conduct" on behalf of the school, and therefore cannot possibly contradict the religious convictions of a faith-based private institution. *See Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 65, 126 S. Ct. 1297, 1310 ("We have held that high school students can appreciate the difference between speech a school *sponsors* and speech the school *permits* because legally required to do so, pursuant to an equal access policy. Surely students have not lost that ability by the time they get to law school.") (emphasis added) (citations omitted). No tenet of the Christian faith would suggest, encourage, or require an educational institution—even a religious one—to deny LGBTQ+ persons the same educational opportunities, programs, services, resources, or benefits afforded to their peers. Allowing Samford University, Point Loma Nazarene University, and other private, federally-funded religious institutions to hide behind a religious exemption and permit arbitrary and irrational discrimination—where the school knowingly accepts

openly LGBTQ+ students without informing them that their ability to engage in any LGBTQ-related expression will be restricted—does nothing to protect religious liberty or the separation of church and state. It only harms LGBTQ students who chose to attend the school based on the belief that they would not be subjected to discrimination by their own university, or that if they were, then the law would protect them. For the foregoing reasons, Amici Curiae respectfully submit that the decision below should be reversed.

Date: August 28, 2023

*/s/ Eli J. Hare*

**Eli J. Hare**
**DICELLO LEVITT LLP**

*Counsel for Amicus Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**: _____ No. 23-35174 _____

I am the attorney or self-represented party.

**This brief contains __6,489__ words,** including __0__ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ **X** ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature: /s/ Eli Hare _____**    **Date: August 28, 2023 _____**
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**    *Rev. 12/01/22*