**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELIZABETH HUNTER; VERONICA BONIFACIO PENALES; ALEX DURON; ZAYN SILVA; RACHEL MOULTON; VICTORIA JOY BACON; HAYDEN BROWN; BROOKE C.; GARY CAMPBELL; TRISTAN CAMPBELL; NATALIE CARTER; RACHEL HELD; LAUREN HOEKSTRA; CHANDLER HORNING; JONATHAN JONES; ASHTIN MARKOWSKI; CAMERON MARTINEZ; MACKENZIE MCCANN; DARREN MCDONALD; SCOTT MCSWAIN; JAYCEN MONTGOMERY; JOURNEY MUELLER; JAKE PICKER; DANIELLE POWELL; SPENCER J. VIGIL; LUCAS WILSON; AUDREY WOJNAROWISCH; DANIEL TIDWELL-DAVIS; DEVIN BRYANT; SAREN CRIAG; JAMIE LORD; CONSOLATA BRYANT; JUSTIN TIDWELL-DAVIS; MEGAN STEFFEN; MORTIMER HALLIGAN, on behalf of themselves and all others similarly situated, | No. 23-35174<br><br>D.C. No. 6:21-cv-00474-AA<br><br><br>OPINION |

*Plaintiffs-Appellants*,

ANDREW HARTZLER; KALIE
HARGROVE; SABRINA
BRADFORD; CLOVER ST.
HUBERT; ALICE MURPHY;
VIOLET ADAMS,

*Appellants*,

v.

U.S. DEPARTMENT OF
EDUCATION; CATHERINE E.
LHAMON, in her official capacity as
Assistant Secretary for the Office of
Civil Rights, U.S. Department of
Education,

*Defendants-Appellees*,

WESTERN BAPTIST COLLEGE,
DBA Corban University; WILLIAM
JESSUP UNIVERSITY; PHOENIX
SEMINARY; COUNCIL FOR
CHRISTIAN COLLEGES &
UNIVERSITIES,

*Intervenor-Defendants-
Appellees*.

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted July 16, 2024
San Francisco, California

Filed August 30, 2024

Before:  MILAN D. SMITH, JR., MARK J. BENNETT,
and ANTHONY D. JOHNSTONE, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Title IX

The panel affirmed the district court's dismissal of an
action brought by LGBTQ+ students against the Department
of Education challenging a religious exemption to Title IX,
which prohibits gender discrimination at federally funded
educational institutions but carves out an exception for
religious institutions whose tenets mandate gender-based
discrimination.

The district court dismissed for failure to state a claim
plaintiffs' claims that Title IX's religious exemption
establishes a religion in violation of the First Amendment

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

and violates the equal protection guarantee of the Fifth
Amendment, and dismissed for lack of Article III standing
plaintiffs' challenge to the Department's implementing
regulations of Title IX as arbitrary and capricious under the
Administrative Procedure Act (APA).

The panel declined to apply the invited error doctrine—
which provides that a party may not complain on review of
errors below for which he is responsible—or the waiver
doctrine—which provides that issues not presented to the
trial court cannot generally be raised for the first time on
appeal—and proceeded to the merits of plaintiffs'
Establishment Clause claim. The panel held that Title IX's
religious exemption does not violate the First Amendment's
Establishment Clause under the historical practices and
understanding test set forth in *Kennedy v. Bremerton School
District*, 597 U.S. 507 (2022). First, the history of tax
exemptions for religious organizations near the time of the
Founding suggests that statutory exemptions that operate as
a subsidy to religious institutions do not violate the
Establishment Clause according to its original
meaning. Second, case law evinces a continuous, century-
long practice of governmental accommodations for religion
that the Supreme Court and this court have repeatedly
accepted as consistent with the Establishment Clause.

The panel affirmed the district court's dismissal of
plaintiffs' claim that Title IX's religious exemption violates
the equal protection guarantee. The panel held that it need
not decide whether intermediate scrutiny or rational basis
review applies because the exemption would survive the
more demanding intermediate scrutiny standard. The
exemption substantially relates to the achievement of
limiting government interference with the free exercise of
religion. The exemption does not give a free pass to

discriminate on the basis of sex to every institution; it contains limits that ensure that Title IX is not enforced only where it would create a direct conflict with a religious institution's exercise of religion.

The panel held that the district court appropriately dismissed, for lack of standing, plaintiffs' claim under the APA challenging as arbitrary and capricious an amendment to Title IX's implementing regulations, the August 2020 Rule, which clarified that institutions are not required to submit a written statement prior to invoking the religious exemption. None of plaintiffs' allegations suggested that the Rule caused an individual plaintiff harm.

Finally, the panel held that the district court did not abuse its discretion in denying plaintiffs leave to amend their complaint.

## COUNSEL

Alletta S. Brenner (argued) and Megan Houlihan, Perkins Coie LLP, Portland, Oregon; Paul C. Southwick, Paul Southwick Law LLC, Portland, Oregon; for Plaintiffs-Appellants.

Ashley C. Honold (argued) and Melissa N. Patterson, Appellate Staff Attorneys; Carol Federighi, Senior Trial Counsel, Civil Division, Federal Programs Branch; Natalie K. Wight, United States Attorney; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

Christopher P. Schandevel (argued) and Kristen K. Waggoner, Alliance Defending Freedom, Lansdowne,

Virginia; David A. Cortman, Alliance Defending Freedom, Lawrenceville, Georgia; Ryan J. Tucker and Mark A. Lippelmann, Alliance Defending Freedom, Scottsdale, Arizona; John J. Bursch, Bursch Law PLLC, Caledonia, Michigan; Gene C. Schaerr (argued), Annika B. Barkdull, and Nicholas P. Miller I, Schaerr Jaffe LLP, Washington, D.C.; Herbert G. Grey, Herbert G. Grey Attorney at Law, Beaverton, Oregon; for Intervenor-Defendants-Appellees.

Rebecca B. Cassady, Richardson Wang LLP, Portland, Oregon; for Amici Curiae Dr. Rachel M. Schmitz, Dr. Meridith G.F. Worthen, Dr. Dawne Moon, and Five More Sociologists.

Caitlin V. Mitchell, Johnson Johnson Lucas & Middleton PC, Eugene, Oregon; for Amicus Curiae Higher Education Researchers.

Christopher A. Perdue, Assistant Attorney General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Oregon Attorney General; United States Department of Justice, Office of the Oregon Attorney General, Salem, Oregon; Rob Bonta, California Attorney General, United States Department of Justice, Office of the California Attorney General, Sacramento, California; William Tong, Connecticut Attorney General, United States Department of Justice, Office of the Connecticut Attorney General, Hartford, Connecticut; Brian L. Schwalb, District of Columbia Attorney General, United States Department of Justice, Office of the District of Columbia Attorney General, Washington, D.C.; Philip J. Weiser, Colorado Attorney General, United States Department of Justice, Office of the Colorado Attorney General, Denver, Colorado; Kathleen Jennings, Delaware Attorney General, United States Department of Justice, Office of the Delaware Attorney

General, Wilmington, Delaware; Anne E. Lopez, Hawaii
Attorney General, United States Department of Justice,
Office of the Hawaii Attorney General, Honolulu, Hawaii;
Aaron M. Frey, Maine Attorney General, United States
Department of Justice, Office of the Maine Attorney
General, Augusta, Maine; Andrea Joy Campbell,
Commonwealth of Massachusetts Attorney General, United
States Department of Justice, Office of the Commonwealth
of Massachusetts Attorney General, Boston, Massachusetts;
Keith Ellison, Minnesota Attorney General, United States
Department of Justice, Office of the Minnesota Attorney
General, St. Paul, Minnesota; Matthew J. Platkin, New
Jersey Attorney General, United States Department of
Justice, Office of the New Jersey Attorney General, Trenton,
New Jersey; Michelle A. Henry, Pennsylvania Attorney
General, United States Department of Justice, Office of the
Pennsylvania Attorney General, Harrisburg, Pennsylvania;
Charity R. Clark, Vermont Attorney General, United States
Department of Justice, Office of the Vermont Attorney
General, Montpelier, Vermont; Kwame Rauol, Illinois
Attorney General, United States Department of Justice,
Office of the Illinois Attorney General, Chicago, Illinois;
Anthony G, Brown, Maryland Attorney General, United
States Department of Justice, Office of the Maryland
Attorney General, Baltimore, Maryland; Dana Nessel,
Michigan Attorney General, United States Department of
Justice, Office of the Michigan Attorney General, Lansing,
Michigan; Letitia James, New York Attorney General,
United States Department of Justice, Office of the New York
Attorney General, New York, New York; Aaron D. Ford,
Nevada Attorney General, United States Department of
Justice, Office of the Nevada Attorney General, Carson City,
Nevada; Peter F. Neronha, Rhode Island Attorney General,

United States Department of Justice, Office of the Rhode Island Attorney General, Providence, Rhode Island; Robert W. Ferguson, Washington Attorney General, United States Department of Justice, Office of the Washington Attorney General, Olympia, Washington; for Amicus Curiae Oregon and 19 Other States.

Eli J. Hare, DiCello Levitt LLP, Birmingham, Alabama; Amy Keller, DiCello Levitt LLP, Chicago, Illinois; David A. Straite, DiCello Levitt LLP, New York, New York; for Amici Curiae Five LGBTQ+ Student Leaders at Private Religious Universities.

Jeremy M. Creelan, Rémi J.D. Jaffré, and Owen W. Keiter, Jenner & Block LLP, New York, New York; Michelle S. Kallen, Jenner & Block LLP, Washington, D.C.; for Amici Curiae Dr. H.L. Himes and Dr. Theresa Stueland Kay.

Eric C. Rassbach and Daniel L. Chen, The Hugh and Hazel Darling Foundation Religious Liberty Clinic, Pepperdine University, Caruso School of Law, Malibu, California; for Amicus Curiae the Jewish Coalition for Religious Liberty.

David M. Andersen, Steven M. Sandberg, and Madelyn L. Blanchard, Brigham Young University, Office of the General Counsel, Provo, Utah; for Amici Curiae Association of Catholic Colleges and Universities, Brigham Young University, and Thirteen Additional Religious Colleges and Universities.

Alan J. Reinach, Church State Council, Westlake Village, California; for Amici Curiae Seven Scholars and Researchers and Church State Council.

**OPINION**

M. SMITH, Circuit Judge:

Title IX, a landmark law prohibiting gender discrimination at federally funded educational institutions, carves out an exception for religious institutions whose tenets mandate gender-based discrimination. 20 U.S.C. § 1681(a). Plaintiffs are lesbian, gay, bisexual, transgender, and/or nonbinary (LGBTQ+) students who applied to or attended religious institutions and alleged that they experienced discrimination on the basis of their sexuality or gender identity. They brought suit against the Department of Education (Department), claiming that Title IX's religious exemption violates the equal protection guarantee of the Fifth Amendment and establishes a religion in violation of the First Amendment. They also challenge the Department's implementing regulations of Title IX as arbitrary and capricious under the Administrative Procedure Act (APA). The district court dismissed the complaint and denied leave to amend on all claims.

This case addresses, among other issues, the question of whether Congress's attempt to balance the important interests of religious freedom and gender-based equality violated the Constitution. Because we hold that Congress did not exceed its constitutional boundaries, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I. Statutory and Regulatory Background**

Title IX prohibits certain educational institutions from receiving federal funding if they exclude, deny benefits to, or subject to discrimination any person "on the basis of sex." 20 U.S.C. § 1681(a). We have recently interpreted this

provision to prevent federally funded educational institutions from discriminating against gay or transgender students. *See Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023); *see also Bostock v. Clayton County*, 590 U.S. 644, 660 (2020) ("[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex" in the context of Title VII.). Title IX does not prohibit discrimination, however, when an educational institution "is controlled by a religious organization if the application of [Title IX] would not be consistent with the religious tenets of such organization."     20 U.S.C. § 1681(a)(3).

The Department, the agency responsible for providing federal financial assistance pursuant to Title IX, promulgates implementing regulations that describe appropriate methods for invoking this religious exemption. *See* 34 C.F.R. § 106.12. The first regulations implementing Title IX provided that "[a]n educational institution which wishes to claim the [religious] exemption . . . shall do so by submitting in writing to [the Assistant Secretary for Civil Rights (the Assistant Secretary)] a statement . . . identifying the provision of [the Title IX implementing regulations] which conflict with a specific tenet of the religious organization." 40 Fed. Reg. 24128, 24129 (June 4, 1975).

Although the 1975 regulation appears to require a writing invoking the exception in advance of an institution claiming the exception in an individual case, long-standing Department practice indicates that submitting a writing was only one permissive way for a religious institution to claim the exception. *See* 83 Fed. Reg. 61462, 61482 (Nov. 29, 2018) (providing that, consistent with "longstanding Department practice," "[t]he statutory text of Title IX offers

an exemption to religious entities without expressly requiring submission of a letter").

In 2020, the Department amended the Title IX regulations to clarify that institutions are not required to submit a written statement prior to invoking the exemption. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30031, 30475–82 (May 19, 2020) (the August 2020 Rule, the 2020 Rule, or the Rule). The revised regulation provides that an institution "*may*" submit a written request to the Assistant Secretary requesting an exemption. 34 C.F.R. § 106.12(b) (emphasis added). The regulation also specifies that the institution "may . . . raise its exemption" after the Department notifies the institution that it is under investigation for noncompliance. *Id.*

## II. Factual and Procedural Background

Plaintiffs are LGBTQ+ students who applied to, attended, or currently attend religious colleges and universities that receive federal funding. They allege that religious institutions discriminated against them on the basis of sex, specifically due to their sexual orientations and gender identities, by, inter alia, subjecting them to discipline, rejecting their applications for admission, or rescinding their admissions.

Thirty-three Plaintiffs sued the Department in March 2021. Seven new Plaintiffs later joined the original thirty-three. They alleged several causes of action against the Department: (1) a Fifth Amendment substantive due process and equal protection claim, (2) two claims under the First Amendment alleging violations of the Establishment Clause and deprivations of freedom of religion, speech, assembly, and association, (3) a claim under the APA challenging the

2020 Rule, and (4) a claim under the Religious Freedom Restoration Act.

Between June and August of 2021, thirty-five of the Plaintiffs filed Title IX administrative complaints. On August 5, 2021, Plaintiffs moved for a temporary restraining order, which the district court denied on August 30, 2021. Plaintiffs also moved for a preliminary injunction. The Department moved to dismiss the First Amended Complaint (FAC). Later, intervenors, including the Council for Christian Colleges and Universities (CCCU) and several private religious schools (Religious Schools) (together, the Intervenors, and with the Department, the Defendants), filed a separate, joint motion to dismiss.

The district court held a three-day evidentiary hearing on the preliminary injunction in November 2021. On December 2, 2021, Plaintiffs moved to amend the FAC to (1) add factual allegations that Plaintiffs filed administrative complaints, (2) adjust the prayer for relief to be consistent with their motion for a preliminary injunction, and (3) include eight new plaintiffs.

On January 12, 2023, the district court denied Plaintiffs' motion for preliminary injunction and dismissed the FAC with prejudice. Relevant here, the district court dismissed the APA claim for lack of Article III standing and dismissed both the Fifth Amendment equal protection claim and First Amendment Establishment Clause claim for failure to state a claim. Because the district court found that amendment would not cure the FAC's defects, it denied Plaintiffs' pending motion to file a Second Amended Complaint (SAC).

Plaintiffs timely appealed the district court's dismissal of the First Amendment, APA, and Fifth Amendment claims

and argue that the district court erred in denying them leave
to amend.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C.
§§ 1331, 1361, 2201, 2202, and 5 U.S.C. § 702.  We have
appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We
review de novo a district court's grant of a motion to dismiss.
*Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  We
review a denial of a motion to amend a complaint for abuse
of discretion.  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080,
1087 (9th Cir. 2002).

## ANALYSIS

### I.  Establishment Clause Claim

The relevant portion of the First Amendment provides
that, "Congress shall make no law respecting an
establishment of religion."  U.S. CONST. amend. I.  The
district court dismissed Plaintiffs' claim that the Title IX
exemption violates the Establishment Clause but, in doing
so, applied the then-abandoned legal standard articulated in
*Lemon v. Kurtzman*, 403 U.S. 602 (1971).  On appeal,
Plaintiffs ask us to vacate the district court's order and
remand for consideration of the Establishment Clause claim
under *Kennedy v. Bremerton School District*, 597 U.S. 507
(2022), in the first instance.  They argue in the alternative
that, on the merits, the exemption is "inconsistent with the
historical understanding of the Establishment Clause
because it discriminates between religious sects and is
available only to *some* religious groups," "prefer[s] religion
to irreligion," and "conscripts federal employees as
ecclesiastical inquisitors."

The Department asks us to hold that Plaintiffs invited the error and thus cannot succeed on appeal. Similarly, the Religious Schools ask us to hold that Plaintiffs waived the argument. We decline both requests and hold that, on the merits, the Title IX exemption does not violate the Establishment Clause.

### A. We decline to apply the invited error and waiver doctrines.

We begin by briefly surveying the muddled background that underlies our evaluation of this procedural issue. For decades, courts deciding Establishment Clause violations did so under the three-part test set forth in *Lemon*. There, the Supreme Court "attempted a 'grand unified theory' for assessing Establishment Clause claims." *Kennedy*, 597 U.S. at 534 (quoting *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 84 (2019) (Gorsuch, J., concurring in the judgment)). The *Lemon* test "called for an examination of a law's purposes, effects, and potential for entanglement with religion." *Id.* (citing *Lemon*, 403 U.S. at 612–13). On August 9, 2021, when the Department moved to dismiss Plaintiffs' Establishment Clause claim, the Department asked the district court to apply *Lemon*.

The Intervenors took a different approach and asked the court to apply an originalism-based test. They explained why the exemption was "consistent with history and tradition," noting that "[s]ince 1971, courts have sporadically applied . . . *Lemon*." The Intervenors argued that "the Supreme Court has largely discarded *Lemon* and adopted an approach that 'looks to history for guidance'—asking whether a particular action is consistent with 'historical practices and understandings.'" (quoting *Am. Legion*, 588 U.S. at 61 (plurality opinion)).

In response to Intervenors' motion to dismiss, Plaintiffs were silent on whether and how a history and tradition test would apply. *Hunter v. Dep't of Educ.*, No. 6:21-cv-00474, Dkt. 143 at 20. Then, on June 27, 2022, the Supreme Court issued *Kennedy*, clarifying that it "long ago abandoned *Lemon* and its endorsement test offshoot." 597 U.S. at 534. The Court explained that, instead, "the Establishment Clause must be interpreted by "reference to historical practices and understandings," drawing the line between permissible and impermissible government action in a way that "accord[s] with history and faithfully reflect[s] the understanding of the Founding Fathers." *Id.* at 535–36 (quoting *Town of Greece v. Galloway*, 572 U.S. 565, 576, 577 (2014) (cleaned up)).

The Intervenors filed a notice of supplemental authorities before the district court, alerting it to the recent *Kennedy* decision and explaining that "courts applying *Lemon* do so in error." *Hunter*, 6:21-cv-00474, Dkt. 172 at 3–4. Plaintiffs did not respond to the notice's arguments about *Kennedy*, even though they represented to the district court that they would do so in additional briefing. *See generally id.* At oral argument, Plaintiffs represented to us that they did not file a response on the issue because, prior to deciding Defendants' motions to dismiss, the district court expressed its frustration with the case's excessive briefing. Without Plaintiffs' response to *Kennedy*, the district court issued its order granting the Defendants' motions to dismiss on January 12, 2023, applied the *Lemon* test without mentioning *Kennedy*, and noted that "Plaintiffs [do not] dispute that the three-prong test announced in *Lemon* applies."

The district court erred by applying the *Lemon* test without reference to the historical practices and understandings of the Establishment Clause. *See Kennedy*,

597 U.S. at 535. The district court ruled on the Defendants' motions to dismiss six months after the Supreme Court issued *Kennedy*, which clearly instructed that *Lemon* was "long ago abandoned." *Id.* at 534. Thus, the district court had the benefit of *Kennedy's* instruction, with notice from the Intervenors about its application to the case, *see Hunter*, 6:21-cv-00474, Dkt. 172 at 3–4, but ignored it. In fact, the district court order does not cite to or explicitly consider *Kennedy* at all.

Despite this error, the Department asks us to decline to address the Establishment Clause claim on appeal because "[P]laintiffs did not advance any arguments in district court based on *Kennedy* or the historical-analysis test, which existed prior to *Kennedy*." Thus, according to the Department, the panel should apply the invited error doctrine. *Id.*

The invited error doctrine states that a party "may not complain on review of errors below for which he is responsible." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (quoting *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1336–37 (9th Cir. 1985)). It applies where a party "introduced, or directly set in motion, the error of which he complain[s]." *United States v. Magdaleno*, 43 F.4th 1215, 1220 (9th Cir. 2022). The Ninth Circuit has "never applied the invited error doctrine in a circumstance" where "there is no indication that [the party] introduced the alleged error." *Id.* at 1220.

There is no indication that Plaintiffs introduced the error here. As explained above, the Department asked the district court to apply *Lemon* when it initially moved to dismiss in August 2021. Although the Intervenors asked the district court to apply the historical analysis test in their motion to

dismiss, that test was not the law of the circuit at the time. *See Kennedy v. Bremerton Sch. Dist.*, 991 F.3d 1004, 1017 (9th Cir. 2021) (applying objective observer entanglement test under *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000)), *rev'd*, 597 U.S. 507 (2022). Plaintiffs responded to Intervenors' motion without reference to the historical analysis test and remained silent on whether it should apply. *See Hunter v. Dep't of Educ.*, No. 6:21-cv-00474, Dkt. 143 at 20. And Plaintiffs again remained silent when Intervenors notified the district court that the historical practices test should apply after *Kennedy*. Because Plaintiffs did not "introduce" or "directly set [the error] in motion," the invited error doctrine does not apply here. *See Magdaleno*, 43 F.4th at 1220.[1]

We also decline to apply the waiver doctrine. Issues "not presented to the trial court cannot generally be raised for the first time on appeal." *United States v. Flores-Payon*, 942 F.2d 556, 558 (9th Cir. 1991). This is true whether the argument is one "in support of a motion to dismiss or an argument establishing that dismissal is inappropriate." *Zixiang Li v. Kerry*, 710 F.3d 995, 1000 n.4 (9th Cir. 2013) (quoting *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012)). Several exceptions apply, including if (1) there are "exceptional circumstances" explaining why the issue was not raised below, (2) "the new issue arises while the appeal is pending because of a change in the law," (3) "the issue presented is purely one of law and

---

[1] The only case the Department refers to, *Sovak v. Chugai Pharmaceutical Company*, comes out against its position. 280 F.3d at 1270. There, we held that it was not invited error where the district court erroneously applied state law when it should have applied federal law. *Id.* The appealing party correctly asked the district court to apply federal law, so the invited error doctrine did not apply. *See id.*

the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court," or (4) "plain error has occurred and an injustice might otherwise result." *Flores-Payon*, 942 F.2d at 558. The issue presented fits under the third exception. The district court's analysis of the Establishment Clause claim under *Kennedy* was purely one of law. Defendants suffered no prejudice from the Plaintiffs' failure to submit additional briefing because the Intervenors had notified the district court of *Kennedy*'s existence and application to the case. Defendants had the opportunity to explain why they should win under a history and tradition test several times, including prior to *Kennedy*'s issuance and in the Intervenors' notice to the district court. Thus, we proceed to the merits.

## B. The exemption does not violate the Establishment Clause under the historical practices and understanding test.

To determine whether government action violates the Establishment Clause, the panel must "focus[] on original meaning and history." *Kennedy*, 597 U.S. at 536 (citing *Town of Greece*, 572 U.S. at 575). Any practice that was "accepted by the Framers and has withstood the critical scrutiny of time and political change" does not violate the Establishment Clause. *Town of Greece*, 572 U.S. at 577.

We begin with the historical practices that help to inform the original meaning of the Establishment Clause in its application to religious exemptions. "As history must play such a vital part in understanding what the Bill of Rights requires, it is . . . appropriate to note that at the time this charter of freedom was written, no massive programs of federal aid to the public existed." *Kong v. Scully*, 341 F.3d 1132, 1139 (9th Cir. 2003)*. Because no identical exemption

existed at the Founding, we must use the historical analogues that are available.

The Department contends that such historical analogues may be found in the "substantial evidence of a lengthy tradition of . . . exemptions for religion" at or near the time of the Founding. (quoting *Gaylor v. Mnuchin*, 919 F.3d 420, 427–36 (7th Cir. 2019); *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 723 (1994) (Kennedy, J., concurring in judgment)). Specifically, it refers us to tax exemptions for religious organizations as far back as 1802. *See Gaylor*, 919 F.3d at 427–36; *see also Gibbons v. District of Columbia*, 116 U.S. 404 (1886)).

While there is certainly a long history of tax exemptions for religious organizations dating to the early Republic, Plaintiffs argue that those exemptions are not analogous to a statutory exemption to a requirement for voluntary acceptance of federal funding. Plaintiffs argue that Title IX only applies to institutions who willingly accept federal funding. In other words, those who do not wish to comply with Title IX need not accept funding and thus are not burdened by the government. According to Plaintiffs, the exemption then violates the Establishment Clause because it acts as a subsidy to religious institutions.

Given the dearth of historical equivalents, however, tax exemptions are the most analogous case to Title IX's statutory exemption. As we described them in *Kong*, tax exemptions for religious institutions are really "[s]ubsid[ies] of buildings of worship," which is "a universal practice of state and federal government." 341 F.3d at 1139 (citing *Walz v. Tax Comm'n*, 397 U.S. 664 (1970)). Just as a school is not required to accept federal funding, a religious institution is not required to own property. Even so,

religious institutions are constitutionally exempted from paying property taxes. Both the statutory exemption to Title IX and property tax exemptions operate as a financial benefit to non-secular entities that similarly situated secular entities do not receive. And they were deemed constitutional without a requirement that the exemption only apply if the tax conflicted with a specific tenet of the religion. Even if Title IX's exemption is a "benefit" instead of a "burden," "[a] variety of benefits have been bestowed by government on religious practices and either have been unchallenged or passed constitutional muster without fatal compromise of principle." *Id.* at 1139. Absent additional historical evidence—and Plaintiffs point us to none here—the history of tax exemptions near the time of the Founding suggests that the statutory exemptions that operate as a subsidy to religious institutions do not violate the Establishment Clause according to its original meaning.

Having considered the history of religious exemptions at or near the Founding, the history and tradition test requires us to look next to the "uninterrupted practice" of a law in our nation's traditions. *Kennedy*, 597 U.S. at 536 (quoting *Walz*, 397 U.S. at 680). The Department identifies a relevant tradition in "modern legislative efforts to accommodate religious practice." *See, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 719–20 (2005) (prisoner religious accommodations); *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334 (1987) (Title VII exemption); *Walz,* 397 U.S. at 672–80 (religious property tax exemption); *Zorach v. Clauson*, 343 U.S. 306, 315 (1952) (released time program); *Arver v. United States*, 245 U.S. 366, 376 (1918) (draft exemption); *Goldman v. United States*, 245 U.S. 474, 476 (1918) (same); *Kong*, 341 F.3d at 1139–40 (payments under Medicare and Medicaid

Acts for the nonmedical care of persons whose religious tenets lead them to reject medical services); *Droz v. Comm'r*, 48 F.3d 1120, 1124 (9th Cir. 1995) (Social Security tax exemption); *Int'l Ass'n of Machinists & Aerospace Workers, Lodge 751 v. Boeing Co.*, 833 F.2d 165, 170–71 (9th Cir. 1987) (Title VII religious accommodation); *Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239, 1244–45 (9th Cir. 1981) (similar).

Though most of these cases were decided under the *Lemon* test, they evince a continuous, century-long practice of governmental accommodations for religion that the Supreme Court and our court have repeatedly accepted as consistent with the Establishment Clause. The examples provided by the Department demonstrate that religious exemptions have "withstood the critical scrutiny of time and political change." *Town of Greece*, 572 U.S. at 577. And given that this exact law did not exist at the Founding, that more recent (albeit, still lengthy) tradition is of greater salience.

Plaintiffs make several arguments that, despite the long tradition of statutory religious accommodations, the Title IX exemption still violates the Establishment Clause. First, Plaintiffs argue that the exemption prefers religion to irreligion, impermissibly "singling out religious institutions for special benefits." We disagree. In *Amos*, the Supreme Court held that Title VII's similar exemption for religious institutions from religious non-discrimination in employment, even when the job function is secular, does not violate the Establishment Clause. 483 U.S. at 338. While *Amos* was decided under *Lemon* and does not reference historical practices or understandings, it does make the logical point that no religious accommodation could stand if we held that this type of accommodation prefers religion

over irreligion.  *See id*; *Cutter*, 544 U.S. at 720 (holding that the Religious Land Use and Institutionalized Persons Act's (RLUIPA) prisoner religious accommodation provision was compatible with the Establishment Clause "because it alleviates exceptional government-created burdens on private religious exercise").  Given that the government "sometimes must" accommodate religion, the exemption does not prefer religion to irreligion for simply carving religious behavior out of the statute.

The cases cited by Plaintiffs do not discuss the historical practices and understanding of the Establishment Clause as relevant here.  *See Kiryas Joel*, 512 U.S. at 696 (delegating public school authority to religious group is unconstitutional); *Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 15 (1989) (exempting religious publications from sales tax failed under the *Lemon* test); *Torcaso v. Watkins*, 367 U.S. 488, 490–91 (1961) (requiring public officers to declare a belief in God is similar to pre-Founding religious oath requirements).  In fact, *Kiryas Joel* makes clear that the state need not "be oblivious to impositions that legitimate exercises of state power may place on religious belief and practice."  512 U.S. at 705.  The government "may (and sometimes must) accommodate religious practices."  *Id.* (quoting *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144 (1987)).

Second, Plaintiffs argue that the exemption "discriminates between religious sects and is available only to *some* religious groups—those whose tenets are inconsistent with an application of Title IX."  This argument fails.  The statute facially applies to *any* religious organization for which the religious tenets would not be consistent with the application of Title IX.  20 U.S.C. § 1681(a)(3).  *See Cutter*, 544 U.S. at 724 ("RLUIPA . . .

confers no privileged status on any particular religious sect, and singles out no bona fide faith for disadvantageous treatment."). And there is no evidence in the record that the exemption here "was drafted with the explicit intention of including particular religious denominations and excluding others." *Larson v. Valente*, 456 U.S. 228, 254 (1982). Under Plaintiffs' view, the only constitutional alternative would be to exempt any religious institution from the statute without regard to its tenets—a less narrowly tailored law. The Constitution does not require such a result.

Third, Plaintiffs contend that the exemption impermissibly "conscripts federal employees as ecclesiastical inquisitors, charged with ascertaining the 'religious tenets' of each school and determining whether a particular application of Title IX is consistent with the teachings of that denomination."

The Department must "accept the ecclesiastical decisions of church tribunals as it finds them." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 698, 713 (1976) (overturning a state supreme court decision holding that a church did not comply with its own laws and regulations in removing the respondent as bishop of the church); *see also Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 761–62 (2020) (holding that "[w]hen a school with a religious mission entrusts a teacher with the responsibility of educating and forming students in the faith, judicial intervention into disputes between the school and the teacher threatens the school's independence in a way that the First Amendment does not allow"); *Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 447, 450 (1969) ("[T]he decisions of the proper church tribunals on matters purely ecclesiastical, although

affecting civil rights, are accepted in litigation before the secular courts as conclusive . . . .").

It clearly does so. Here, when a school claims an exemption, the Department must make two determinations—whether the school is controlled by a religious organization and whether Title IX would conflict with the religious tenets of the controlling organization. 20 U.S.C. § 1681(a)(3). The Department has, as pleaded in the FAC, "never rejected an educational institution's assertion that it is controlled by a religious organization" and "never denied a religious exemption when a religious educational institution asserts a religious objection."

We are not persuaded that this type of facially neutral religious accommodation violates the Establishment Clause.

## II. Equal Protection Claim

The relevant portion of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law," U.S. CONST. amend. V, and ensures equal protection of the law. *Buckley v. Valeo*, 424 U.S. 1, 93 (1976) (per curiam), *abrogated on other grounds*. Plaintiffs contend that the Title IX exemption violates this equal protection guarantee because it "targets Americans for disfavored treatment based on their sex, including targeting based on sexual orientation and gender identity." They claim that the exemption is facially discriminatory, motivated by discriminatory animus, and unconstitutional as applied to Plaintiffs. Specifically, they argue that we should apply intermediate scrutiny and hold that the exemption does not meet that high standard. Defendants, on the other hand, argue that we should apply rational basis review, which they contend the exemption easily withstands.

Because the exemption would survive the more demanding intermediate scrutiny standard, we need not decide which standard applies.  A statute passes intermediate scrutiny when it "serve[s] important governmental objectives" and is "substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197 (1976). The exemption seeks to accommodate religious educational institutions' free exercise of religion.  The free exercise of religion is "undoubtedly, fundamentally important." *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018); *see also Amos*, 483 U.S. at 339 (noting that a "legitimate purpose" includes "limiting governmental interference with the exercise of religion"); *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 717–18 (1981) (acknowledging that denying a benefit to a person due to conduct mandated by his religious beliefs constitutes a burden on the free exercise of religion).

The exemption substantially relates to the achievement of limiting government interference with the free exercise of religion.  As the Department states, the "statutory limitations on its application ensure a substantial fit between [ends and] means."    It only exempts educational institutions (a) controlled by religious institutions and (b) only to the extent that a particular application of Title IX would not be consistent with a specific tenet of the controlling religious organization. *See* 20 U.S.C. § 1681(a)(3).  The exemption does not give a free pass to discriminate on the basis of sex to every institution; it contains limits that ensure that Title IX is not enforced only where it would create a direct conflict with a religious institution's exercise of religion. *See id.* Thus, the exemption substantially relates to a

"fundamentally important" governmental interest. *Azar*, 911 F.3d at 582.**[2]**

As we have previously expressed sitting en banc: "We do not in any way minimize the ostracism that LGBTQ+ students may face because of certain religious views. . . ." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc). We acknowledge that the discrimination LGBTQ+ individuals face (both on religious campuses and outside of them) is invidious and harmful. However, "the First Amendment's Free Exercise Clause guarantees protection of those religious viewpoints even if they may not be found by many to be 'acceptable, logical, consistent, or comprehensible.'" *Id.* (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021)). Title IX's religious exemption does not violate the Fifth Amendment's Equal Protection guarantee.

## III.  APA Claim

The district court appropriately dismissed Plaintiffs' APA claim for lack of Article III standing. To establish standing, a plaintiff "must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

In the FAC, Plaintiffs claimed that the Department's August 2020 Rule was arbitrary and capricious under the APA because it "eliminated transparency and notice for

---

[2] We decline to address the Religious Schools' argument that the exemption is required by the First Amendment's Free Exercise clause.

students applying to and enrolled at religious educational institutions that discriminate based on sexual orientation or gender identity" by removing the language from the prior rule that, according to Plaintiffs, required a submitted letter before requesting an exemption in an individual case. They further claim that the institutions "rely on the August 2020 Final Rule to maintain vague and indeterminate policies and practices with respect to compliance with Title IX as applied to LGBTQ+ students," and that the Rule "exposes more LGBTQ+ students to the risk of abuse, harassment and loss of their constitutional rights at taxpayer-funded, religious colleges and universities." On appeal, Plaintiffs underscore that their injury rests on the lack of advance notice to the students applying to and attending the religious schools, rather than on any injury from the schools' increased likelihood to qualify for an exemption. In other words, Plaintiffs do not contend on appeal that the August 2020 Rule made it any more likely that the schools could permissibly discriminate under Title IX, only that it deprived the Plaintiffs of advance notice that their schools could or would discriminate against them.

The district court found that the Plaintiffs failed to plead causation, because after "review[ing] Plaintiffs' evidence in the form of expert witnesses, hours of hearing testimony, hundreds of exhibits, multitudes of declarations, and legal briefing," it concluded that Plaintiffs did not allege that the 2020 Rule contributed to universities "conceal[ing] their discriminatory practices from students." Specifically, the district court held that "Plaintiffs do not allege how any of the schools they attend are more likely to qualify for a religious exemption now, under the 2020 [R]ules they challenge, than they would have been previously" because even under the prior rule, the Department "never rejected an

educational institution's assertion that it is controlled by a religious organization." Finally, the district court concluded that Plaintiffs' requested relief would not redress their alleged injuries, as they did not plead that invalidation of the 2020 Rule would "alter either the behavior of the religious schools or the outcomes of discrimination complaints or religious exemption requests filed with Defendants under Title IX."

We need not reach the question of whether Plaintiffs suffered injury in fact because we hold that the August 2020 Rule did not cause their injuries. Causation is "ordinarily substantially more difficult to establish" "when (as here) a plaintiff challenges the government's 'unlawful regulation (or lack of regulation) of someone *else*." *Id.* at 382 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)). To thread the causation needle in cases where a regulation does not regulate plaintiffs, they must show that the regulated third parties "will likely react in predictable ways" that in turn will likely injure plaintiffs. *Id.* at 383. Those links must not be "too speculative or attenuated." *Id.* There are a variety of "familiar circumstances where government regulation of a third-party . . . may be likely to cause injury in fact to an unregulated plaintiff." *Id.* at 384. Evidence of injury that existed prior to a challenged rule cannot suffice to show Article III standing. *California v. Texas*, 593 U.S. 659, 677 (2021).

Although Plaintiffs argue that students would have chosen to apply to or attend different schools if they had advance notice of the schools' discriminatory policies, Plaintiffs do not refer us to any student who applied to and accepted admission to attend their religious institution after

the 2020 Rule.**[3]** Nor does any Plaintiff allege that the August 2020 Rule caused any school's change in policy or specific instance of discrimination. To cite a few examples, Plaintiff Zayn Silva was denied admission to his desired university six months prior to implementation of the August 2020 Rule, while Plaintiff Kalie Hargrove re-enrolled in Lincoln Christian University in 2019, prior to the 2020 Rule, and does not allege that the August 2020 Rule induced the school's discrimination against her for her transgender identity. As another example, Plaintiff Veronica Bonifacio Penales started attending Baylor University in 2019, prior to the 2020 Rule, and does not allege that any of Baylor's policies changed after the Rule's implementation. And in 2017, Plaintiff Jonathan Jones began attending Azusa Pacific University, which rescinded its allowance of same-sex dating in 2019, all prior to the 2020 Rule.

Plaintiffs do not claim that any institution is more likely to obtain an exemption after the Rule. Nor do they contest that the prior practice of the Department was not to require a prior written statement from an institution before granting it an exemption. Thus, any student who began attending a religious university prior to the 2020 Rule was equally as likely to experience discrimination without recourse before and after the Rule went into effect. None of the allegations that Plaintiffs refer us to suggest that the Rule caused any individual Plaintiff harm. Indeed, the FAC states the

---

[3] Although there are 48 Plaintiffs alleging injury in the SAC, we include in our discussion only the individuals to whom the Plaintiffs cited in their briefing on appeal. We note, however, that all the Plaintiffs in both the operative FAC and the proposed SAC either experienced injury prior to the August 2020 Rule, had prior notice that their schools would discriminate against them, or failed to allege that the August 2020 Rule caused their schools to discriminate against them.

opposite: that the Department has never, either before or after the August 2020 Rule, denied a religious exemption from a religious educational institution.[4]

Plaintiffs' argument that "at least some schools would not have discriminated until they had submitted written requests for exemptions" is too speculative. Plaintiffs would need to plead that they experienced institutional discrimination after the 2020 Rule and that the 2020 Rule caused that discrimination. They do not, so they cannot establish Article III standing.

## IV. Motion to Amend

The district court did not abuse its discretion in denying Plaintiffs leave to amend the complaint. "Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018). None of Plaintiffs' proposed amendments, give us reason to believe that they could plead that the exemption would not survive intermediate scrutiny, that they have evidence that the original understanding of the Establishment Clause would prohibit the Title IX exemption, or that any Plaintiff was injured because of the August 2020 Rule.

---

[4] Plaintiffs also allege that the August 2020 Rule "has emboldened schools that discriminate against LGBTQ+ students," implying that more frequent or more severe discrimination is traceable to the Rule. Even assuming such an increase has occurred since the 2020 Rule took effect, Plaintiffs' allegations that the Rule caused the increase are conclusory. They do not specify how the 2020 Rule emboldens institutions—which are no more likely to receive exemptions today than before the Rule—to engage in additional discrimination. Plaintiffs' assertions of an indirect emboldening effect are thus too speculative and attenuated to establish standing.

## CONCLUSION

The judgment of the district court is **AFFIRMED**.